# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN DARAGO, et al., | ) | CASE NO. 5:18-cv-2639 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| LIVE NATION ENTERTAINMENT, INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

There are presently several motions pending before the Court. Specifically, the Court shall address herein: (1) the motion of plaintiff Kevin Darago ("Darago") to remand this matter to state court (Doc. No. 18 ["MTR"]); (2) the motion of defendant James Grant Group Ltd. ("James Grant") to dismiss Darago's complaint (Doc. No. 15 ["James Grant MTD Darago"]); (3) the motion of James Grant to dismiss the complaint of plaintiff Ohio Bureau of Workers' Compensation ("BWC") (Doc. No. 14 ["James Grant MTD BWC"]); (4) the motion of defendant AM LV PR LLC ("AM LV PR") to dismiss Darago's complaint (Doc. No. 8 ["AM LV PR MTD Darago"]); (5) the motion of AM LV PR to dismiss BWC's complaint (Doc. No. 12 ["AM LV PR MTD BWC"]); and (6) the motion of Darago to amend his complaint. (Doc. No. 33 ["MTA"].)

All the pending motions are fully briefed. (*See* Doc. No. 20 (Response of defendants Live Nation Worldwide, Inc., Mark Hoppus, Travis Barker, and Matt Skiba (collectively "Live Nation defendants") in opposition to Darago's motion to remand ["MTR Opp'n"]); Doc. No. 24

(Darago's reply in support of remand ["MTR Reply"]; Doc. No. 27 (Darago's response to James Grant's motion to dismiss ["James Grant MTD Darago Opp'n"]); Doc. No. 31 (James Grant's reply in support of dismissing Darago's complaint ["James Grant MTD Reply"]); Doc. No. 28 (BWC's opposition to James Grant's motion to dismiss ["James Grant MTD BWC Opp'n"]); Doc. No. 32 (James Grant's reply in support of dismissal of BWC's complaint ["James Grant MTD BWC Reply"]); Doc. No. 22 (Darago's opposition to AM LV PR's motion to dismiss ["AM LV PR MTD Darago Opp'n"]); Doc. No. 25 (AM LV PR's reply in support of dismissal of Darago's complaint ["AM LV PR MTD Darago Reply"]); Doc. No. 23 (BWC's opposition to LV PR motion to dismiss ["AM LV PR MTD BWC Opp'n"]); Doc. No. 26 (AM LV PR's reply in support of dismissal of BWC's complaint ["AM LV PR MTD BWC Reply"]); Doc. No. 34 (James Grant and AM LV PR's opposition to Darago's motion to amend ["MTA James Grant/AM LV PR Opp'n"]); Doc. No. 35 (Live Nation defendants' opposition to Darago's motion to amend ["MTA Live Nation defendants Opp'n"]); Doc. No. 37 (Darago's reply in support of his motion to amend ["MTA Reply"]). Accordingly, the motions are ripe for resolution.

For the reasons to follow, the motion to remand is DENIED, the motions to dismiss are GRANTED, and the motion to amend is GRANTED IN PART.

**I. BACKGROUND**

The present lawsuit concerns injuries Darago sustained on August 9, 2016, at Blossom Music Center ("Blossom") during a concert involving the band Blink-182.[1] Blossom is an outdoor music venue in Cuyahoga Falls, Ohio, that contains a pavilion with permanent seating, a

---

[1] There is discrepancy in the record as to whether the band's proper name is "Blink-182" or "blink-182."

lawn area with standing room seating, a pit area, and a stage. (Doc. No. 1-1, Darago Complaint ["Darago Compl."] ¶¶ 17, 19, 31.) Prior to the injury giving rise to this litigation, Darago, a resident of Ohio, was employed full-time as a Senior Staff Accountant at nonparty Coleman Professional Services. (*Id*. ¶ 14.) Darago was also employed part-time for nonparty C and C WD Studio Productions LLC ("C and C"). (*Id*. ¶ 13.) C and C is in the business of providing staffing to venues "where musical groups and bands perform." (*Id*.) On August 9, 2016, Darago was providing security, through C and C, at Blossom for the Blink-182 concert. (*Id*. ¶ 30.)

Defendant Viking Wizard Eyes, LLC ("Viking") was doing business as Blink-182, "a musical band that played pop-punk rock music[.]" (*Id*. ¶ 17.) The band's members included defendants Mark Hoppus ("Hoppus"), Travis Barker ("Barker"), and Matt Skiba ("Skiba"). (*Id*. ¶ 18.) James Grant was the management company that managed Blink-182. (*Id*. ¶ 22.) Live Nation Worldwide, Inc. ("Live Nation") "was an entity that arranged musical performances at Blossom, including promoting musical groups and bands." (*Id*. ¶ 21.)

According to Darago's complaint, defendants collectively arranged for Blink-182 to perform at Blossom on August 9, 2016. (*Id*. ¶ 25.) As with all the band's venues, defendants ensured that there would be a "standing room only area for some patrons." (*Id*. ¶ 24.) Specifically, the pit area was arranged to accommodate approximately 600 standing patrons. (*Id*. ¶ 33.) Darago alleges that, prior to the concert, defendants "instructed the crowd management members and other staff members to allow patrons to 'crowd surf' and 'mosh,' because [d]efendants wanted the patrons to 'have fun.'" (*Id*. ¶ 35.) "Crowd surfing" or "moshing" involves "lifting and passing around a patron overhead by other patrons during a rock concert." (*Id*. ¶ 36.) Blossom does not permit crowd surfing or moshing at its events. (*Id*. ¶ 19.)

3

During the performance, several patrons began to crowd surf in the pit area. The crowd would pass the "surfers" around overhead toward the barricaded area in front of the stage. When a "surfer" reached the barricaded area, crowd management personnel would help the patron to the ground. (*Id*. ¶ 43.) Darago was one of the members of the security detail assisting patrons in the pit area. One particular patron, a female concertgoer, repeatedly crowd surfed her way to the barricaded area. On one occasion, she began kicking her feet as she was helped to the ground. In doing so, her foot struck Darago's left eye, causing Darago "to suffer permanent eye damage, including permanent loss of sight." (*Id*. ¶ 44.) Darago eventually lost his full-time job, as his loss of sight in one eye left him unable to perform the essential functions of his accounting position. (*Id*. ¶ 45.)

On July 17, 2018, Darago filed the present lawsuit in the Summit County Court of Common Pleas. In addition to the aforementioned named defendants, Darago also named several John Doe individuals and entities. The parties agree that AM LV PR was one of the John Doe entities identified in Darago's complaint.

The complaint raised claims for negligence, negligent hiring, and vicarious liability. Darago also brought a claim for declaratory judgment, seeking a declaration determining the rights and obligations of Darago and BWC regarding the benefits conferred for and on behalf of Darago. As such, Darago's complaint identified BWC as a party defendant. (*See id*. ¶ 8.)

While the case was still in state court, BWC moved for realignment of the parties, citing the fact that Darago's claims were directed solely at other defendants and not BWC, and that Darago and BWC had similar interests. The state court agreed, and on August 28, 2018, the state court granted the motion and ordered BWC to intervene as a named party plaintiff. On

September 4, 2018, BWC filed its intervening complaint against all the remaining defendants. (Doc. No. 1-1 ["BWC Compl."], beginning at 62.[2])

On November 15, 2018, Live Nation removed this action to federal court on the basis of diversity jurisdiction. (Doc. No. 1 (Notice of Removal).) Shortly thereafter, James Grant and AM LV PR moved to dismiss for want of personal jurisdiction. Darago responded with a motion to remand to state court, challenging the realignment of BWC as a party plaintiff, and suggesting that, properly aligned, the parties lack complete diversity. Darago also sought to amend his complaint to identify the names of certain John Does learned during discovery in state court. Because Darago's motion to remand challenges the Court's jurisdiction to hear this matter, the Court begins with that motion.

**II. MOTION TO REMAND**

Darago insists that this case was improperly removed because there is a lack of complete diversity between the parties. He requests that the Court realign the parties so that BWC is treated as a party defendant, which would have the effect of destroying diversity jurisdiction. "A defendant removing a case has the burden of proving the diversity jurisdiction requirements." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921)). "Diversity of citizenship . . . exists only when no plaintiff and no defendant are citizens of the same state." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (quotation marks and citation omitted). "In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

commenced and at the time the notice of removal is filed." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

It is true that, "[f]ollowing removal, the federal court 'takes the case up where the [s]tate court left it off.'" *Flowers v. Oglebay Norton Co.*, No. 1:09CV697, 2009 WL 10689432, at *1 (N.D. Ohio Nov. 17, 2009) (quoting *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)). It is equally true, however, that it is the district "court's responsibility to ensure that the parties are properly aligned according to their interests in the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010). To accomplish this task, the district court looks to the primary purpose or primary dispute in the controversy, *see id.*, and the parties agree that this inquiry guides the Court's analysis.

For example, in *Cleveland Housing*, the property owner, an Ohio resident, brought a public nuisance action against Deutsche Bank and several affiliated companies. The plaintiff also named the City of Cleveland ("the city") as a defendant as a precaution in order to avoid the problem of a potential buyer taking the property subject to the city's lien for unrecorded assessments. The court found that the primary dispute "stem[med] from the [property owner's] demand that [the defendants] abate the alleged nuisances relating to [the] properties[.]" *Id*. The city's interest in its liens was ancillary or secondary to this primary controversy. Accordingly, the court held that the city was properly aligned as a party plaintiff and, as such, there was complete diversity between the plaintiffs and defendants. *Id*. at 560.

Live Nation defendants argue that the primary dispute or the primary purpose of the present lawsuit is to determine whether any of the defendants are liable for Darago's injuries, and

that BWC's lien or subrogation interest for the benefits it paid to Darago is ancillary or secondary to this primary controversy. (MTR Opp'n at 335.) Case law supports their position. In *Winkler v. Win Aviation*, the administrator of an estate brought suit against the deceased's employer over the accident that claimed the deceased's life. The administrator also named BWC as a defendant and sought a declaration as to BWC's right to any monies the administrator might recover for the estate. *See Winkler v. Win Aviation*, No. 2:16-cv-629, 2016 WL 8224827, at *1 (S.D. Ohio Dec. 29, 2016), *report and recommendation adopted*, 2017 WL 543253 (S.D. Ohio Feb. 9, 2017). Notwithstanding the fact that BWC was asserting its statutory rights under Ohio Rev. Code § 4123.931(H), the court found that BWC's interest was secondary to the primary purpose of the litigation: determining the employer's obligations to the estate of its deceased employee. *Id*. at *2.

The court in *Winkler*, in turn, relied on a decision out of this judicial district, *Spangler v. Sensory Effects Powder Sys., Inc*., No. 3:15 CV 75, 2015 WL 1505766 (N.D. Ohio Apr. 1, 2015). In *Spangler*, the plaintiff and BWC brought claims against the plaintiff's former employers for damages resulting from workplace injuries. No allegations were made against BWC. The court found that the primary controversy in the case was whether the plaintiff was entitled to damages for the injuries he suffered in the course of his job duties. BWC's lien for the benefits paid out to the plaintiff, the court found, were "secondary to the purpose of the lawsuit." *Id*. at *1; *see also Roman v. Barlow*, No. 2:12-cv-00747, 2012 WL 6594961, at *3 (S.D. Ohio Dec. 18, 2012) (finding medical insurer was properly realigned as a plaintiff where its subrogation interest in recouping payment for medical bills was secondary to question of liability for automobile accident).

7

The Court agrees that BWC is properly aligned as a party plaintiff as its subrogation right is secondary to the primary dispute: namely, the liability for Darago's workplace injury.³ Because there is complete diversity between plaintiffs and defendants, remand for want of jurisdiction is not warranted. *See, e.g.*, *Mills v. Tekni-Plex*, No. 1:10CV1354, 2011 WL 2076469, at *4 (N.D. Ohio Apr. 29, 2011) (holding that BWC was properly aligned as a party plaintiff in tort claim involving a workplace injury and, as such, there was complete diversity between plaintiffs and defendants), *report and recommendation adopted*, 2011 WL 2076446 (N.D. Ohio May 24, 2011). Darago's motion to remand is DENIED.

**III. JAMES GRANT'S MOTIONS TO DISMISS**

    **A.    Law Relating to Personal Jurisdiction**

James Grant seeks dismissal of plaintiffs' complaints for want of personal jurisdiction.⁴ "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen. Screening, Inc.*, 282 F.3d 883, 887–88 (6th Cir. 2002)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*

---

³ Darago's citation to *Ohio Bureau of Workers' Comp. v. McKinley*, 956 N.E.2d 814 (Ohio 2011), changes neither the Court's analysis nor its conclusion. In *McKinley*, BWC brought suit against a tortfeasor, following the settlement of a personal injury suit brought by a recipient of workers' compensation benefits against the tortfeasor. *Id.* at 816. Not only was BWC's subrogation interest the primary dispute in the resulting litigation, it was the *only* interest, as the underlying tort liability had already been resolved. *Id.*

⁴ As an alternative ground for relief, James Grant argued that Darago "failed to serve his [s]ummons and [c]omplaint upon James Grant when he sent service to the wrong address." (James Grant MTD Darago at 280.) In its reply brief, James Grant represented that it had subsequently, through its counsel, waived service, rending this portion of its motion moot. (James Grant MTD Darago Reply at 447.)

*v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Where, as here, the parties have not conducted jurisdictional discovery and the Court has not held an evidentiary hearing, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id*. In this procedural posture, "the pleadings and affidavits . . . are received in a light most favorable to the plaintiff," and the Court "does not weigh the controverting assertions of the party seeking dismissal." *Id*. at 1459. The Court may, however, consider the defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996)).

To meet its burden of establishing personal jurisdiction, a plaintiff must show both (1) that the defendant is amenable to service of process under Ohio's long-arm statute, and (2) that the exercise of personal jurisdiction would not deny the defendant due process. *See Bird*, 289 F.3d at 871 (quotation marks and citation omitted); *Theunissen*, 935 F.2d at 1459. "[T]he Due Process Clause requires that the defendant have sufficient 'minimum contract[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (quoting *Third Nat'l Bank v. WEDGE Grp., Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989) (further citation omitted)). Courts often begin with the due process considerations, "recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.2d at 1459; *see, e.g.*, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721, 724 (6th Cir. 2000) (affirming dismissal for lack of personal jurisdiction solely on due process grounds).

Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). Plaintiffs claim that specific jurisdiction applies. Therefore, the Court need not discuss general jurisdiction, except to note that it would "require[] the defendant's contacts with the forum state [to be] of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (quotation marks and citation omitted).

Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875. The Court should also consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988).

The purposeful availment requirement is "the sine qua non of in personam jurisdiction[.]" *Mohasco*, 401 F.2d at 381–82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a substantial

connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (quotation marks and citation omitted).

### B. Analysis[5]

James Grant, a California corporation, asserts that, even if it were amenable to service under the long-arm statute (which it denies), Darago has failed to establish that James Grant has the requisite "minimum contacts" with the State of Ohio to satisfy due process. In support of dismissal, James Grant has submitted affidavit evidence demonstrating that it transacts no business in Ohio and does not have any offices, agents, members, representatives, subsidiaries, registered agents, bank accounts, or post office boxes in the state. (Doc. No. 15-1 (Affidavit of Lawrence Vavra ["Vavra Aff."]) ¶¶ 7–13, 16.)[6] Further, it did not oversee plans or arrange for seating for the Blink-182 concert in Cuyahoga Falls, it did not hire or train security personnel or attend the concert, and it provided no instructions regarding crowd surfing or moshing for the concert. (*Id*. ¶¶ 17–22.)

Darago did not submit an affidavit or other evidence to establish personal jurisdiction, electing to rest on the complaint allegations. He points to allegations that defendants *collectively* "arrange[d] an appearance by blink-182" for the concert at Blossom, "attend[ed] the concert to oversee and manage the concert," and held a meeting prior to the concert to instruct crowd control to allow patrons to "crowd surf" and "mosh." (James Grant MTD Darago Opp'n at 406–

---

[5] BWC adopts the arguments raised by Darago. (James Grant MTD BWC Opp'n at 420 ("BWC opposes the said motion on exactly the same basis as the basis set forth in [Darago's] Response to . . . James Grant['s] Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2) and (5).") (emphasis omitted)). Accordingly, the Court's analysis and its ultimate conclusions as to James Grant's motion to dismiss Darago's complaint apply equally to James Grant's motion to dismiss BWC's complaint.

[6] Lawrence Vavra is a Senior Partner of YM&U Group Limited, f/k/a James Grant Group Ltd. (Vavra Aff. ¶ 1.)

07 (citing Darago Compl. ¶¶ 3–6).) There are several problems with Darago's showing. In the face of a well-supported motion to dismiss, Darago was required to venture beyond his complaint allegations and come forward with evidence to establish at least a *prima facie* case for personal jurisdiction. *See Theunissen*, 935 F.2d at 1458. For this reason alone, Darago has failed to demonstrate personal jurisdiction over James Grant.

Moreover, the allegations regarding defendants' collective actions, standing alone, do not inform the Court as to James Grant's contacts with the forum. A court must assess each defendant's contacts with the forum state individually. *See Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The fact that some defendants may have engaged in activity in or affecting the forum does not satisfy the personal jurisdiction requirement as to this particular defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction."); *see, e.g.*, *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 775 (W.D. Ky. 2012) (finding no find personal jurisdiction over defendants for whom no party-specific factual jurisdictional allegations had been alleged).

The only factual jurisdictional allegation directed to James Grant provides that James Grant "was the management company that managed blink-182." (Darago Compl. ¶ 22.) Darago notes that the affidavit James Grant offered in support of its motion "makes no mention on [sic] whether it assisted in the arranging of Blink-182's appearance for a concert in Ohio." (James Grant MTD Darago Opp'n at 414.) Presuming that the omission establishes that James Grant booked Blink-182 to appear at Blossom on August 9, 2016, Darago argues that James Grant "set in motion business operations in Ohio[]" that ultimately led to Darago's injury. (*Id.*) Darago

insists that it "should have been reasonably foreseen that" this action "would have consequences in Ohio." (*Id*.)

The Court concludes that, even if James Grant did book the band to appear in Cuyahoga Falls, this one act would be insufficient to permit the Court to exercise jurisdiction over James Grant. In reaching this conclusion, the Court finds the decision in *Ex parte Int'l Creative Mgmt*. both persuasive and instructive. There, a juvenile concertgoer suffered a spinal cord injury in a mosh pit during a concert. His guardian sued, among others, the talent agency that allegedly negotiated the performance agreement for the band. "Other than arranging the booking of [the band, the talent agency] had no involvement with the actual performance by [the band at the music hall] where [the plaintiff] incurred the injuries that [were] the basis of [the] action." *Ex parte Int'l Creative Mgmt.*, 258 So. 3d 1111, 1119 (Ala. 2018). The court found this one act—divorced of any control over the concert, the venue, or the activity that gave rise to the juvenile patron's injuries—to be too attenuated to support personal jurisdiction over the talent agency. *Id*. (finding that the activity of booking the concert "did not give rise to the episode-in-suit").

Like the talent agency in *Int'l Creative Mgmt*., there is nothing in the record to establish that James Grant had any control over the venue or any involvement with the actual performance by Blink-182. While it is not necessary that James Grant have been physically present in the forum to be subject to its jurisdiction, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), it cannot be said that the act of booking the concert in Ohio, alone, was sufficient to demonstrate that it purposefully availed itself of the forum. Nor could this one act establish a substantial connection with the state. Most significantly, it cannot be said that Darago's injuries arose from James Grant's actions in or directed toward the forum.

13

The present litigation arises from the allegedly tortious instructions and arrangements that permitted patrons to crowd surf during the concert in contravention of the venue's policy. (Darago Compl. ¶ 35.) This is the action that "gives rise" to this litigation, and there is absolutely nothing in the record to suggest that James Grant had any involvement with it. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (stating for litigation to arise out of the defendant's activities, there must be "a 'relationship among the defendant, the forum, and the litigation'" (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977))); *Goodyear Dunlop Tire Operations*, *S.A. v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (noting that specific jurisdiction requires that the parties' activities "gave rise to the episode-in-suit").

Darago has failed to meet its burden of establishing even a *prima facie* case of personal jurisdiction over James Grant, and James Grant is entitled to dismissal of Darago's complaint against it for lack of personal jurisdiction.[7] For all the same reasons, James Grant is entitled to dismissal of BWC's complaint against it. James Grants' motions to dismiss are GRANTED.

### IV. AM LV PR'S MOTIONS TO DISMISS

AM LV PR, a California corporation, also seeks dismissal of plaintiffs' complaints for want of personal jurisdiction and has supported its motions with an affidavit from its Managing Director, Matt Colon. (Doc. No. 8-1, Affidavit of Matt Colon ["Colon Aff."].) While AM LV PR

---

[7] Darago suggests that he should be permitted to conduct "limited discovery on James Grant's contacts with Ohio, *specifically [its] role in scheduling Blink-182's concert tour, including its Blossom Music Center concert*, and subverting Blossom's anti-crowd surfing and anti-moshing policies, in order to aid this Court[.]" (James Grant MTD Darago Opp'n at 407 (emphasis added).) The request to conduct discovery is DENIED. Because the act of scheduling the band is insufficient to establish personal jurisdiction over James Grant, further discovery into this area would be a wasted exercise. Further, Darago has failed to come forward with *any* evidence to indicate that James Grant had even a minor role in subverting Blossom's anti-crowd surfing policy, suggesting that permitting the requested discovery would result in nothing more than a fishing expedition.

was not identified in either plaintiffs' complaint as a named defendant, the parties agree that AM LV PR is one of the John Doe entities sued in this litigation. Like James Grant, AM LV PR argues that this Court lacks jurisdiction over it because it has no offices, employees, agents, or real property in the state and it transacts no business in Ohio. (Colon Aff. ¶¶ 7–16.) Also, like James Grant, AM LV PR highlights the fact that it did not attend the concert, had no role in overseeing the venue or performance, and provided no instructions regarding crowd surfing. (*Id*. ¶¶ 17–22.)

Darago marshals many of the same arguments he relied upon in opposition to James Grant's motion to oppose AM LV PR's request for Rule 12(b) dismissal. He, once again, relies on allegations relating to the collective activities of "defendants" to support personal jurisdiction over AM LV PR.[8] (*See* AM LV PR MTD Darago Opp'n at 346, 350 ("AM LV PR, *in concert with the other defendants*, sought out the opportunity for Blink-182 to put on a concert in Ohio." (emphasis added)); *id.* at 351 ("[P]laintiff . . . was injured as a result of the *defendants' collected decision* to allow 'crowd surfing' and 'moshing.'" (emphasis added)).) There are no factual allegations directed to AM LV PR. There is, however, one factual allegation directed to Deckstar, the entity Darago appears to believe is now known as AM LV PR.[9] This allegation provides that this entity "was the manager which oversaw the operations and/or performances of blink-182." (Darago Compl. ¶ 23.) In light of AM LV PR's showing that it had no role in the concert at Blossom, Darago's unsupported complaint allegation of oversight falls short of

---

[8] Once again, BWC has adopted Darago's arguments relative to the question of personal jurisdiction, this time as to AM LV PR. (AM LV PR MTD BWC Opp'n at 359.)

[9] Darago named Deckstar (inappropriately identified as "Deckster,") as a party defendant. According to AM LV PR, Deckstar is actually a trademark held by AM LV PR. (AM LV PR MTD at 202.) Darago's proposed amended complaint identifies AM LV PR as having previously been known as Deckstar. (Amended Complaint at 469.)

demonstrating personal jurisdiction. Accordingly, and for all the same reasons that James Grant is entitled to dismissal for want of personal jurisdiction, the Court finds that AM LV PR is entitled to dismissal. AM LV PR's motions to dismiss are GRANTED.

## V. DARAGO'S MOTION TO AMEND

The final motion under consideration is Darago's motion to amend his complaint. In his motion, Darago seeks leave to amend in order to identify certain entities and corporations previously identified in the complaint as John Doe entities. He also indicates that he seeks leave to correct the name of party defendant Live Nation, which he explains is improperly identified in the original complaint as "Live Nation Entertainment, Inc." (MTA at 465.) Appended to the motion is a proposed amended pleading. (Doc. No. 33-1 (Amended Complaint).)

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs Darago's motion to amend and provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires."[10] Fed. R. Civ. P. 15(a)(2). "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment" are among the reasons that a court may deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Various defendants argue that leave to amend should be denied because Darago has been

---

[10] Darago's motion incorrectly identifies Ohio R. Civ. P. 15 as the basis for his request to amend. (MTA at 465.) In his reply, Darago suggests that he cited the Ohio rule to illustrate that defendants were properly named in the suit and served in accordance with Ohio law before the action was removed to federal court. (MTA Reply at 500–01.) The Court will rely on the federal rule.

"lackadaisical" in "identifying, naming, and adding various defendants in this case." (MTA James Grant/AM LV PR Opp'n at 487.) But delay alone does not justify the denial of a motion brought under Rule 15(a). *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). Nor does Rule 15 establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors Corp.*, 203 F.2d 789, 793–94 (6th Cir. 1953). Of course, a party seeking to amend must "act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (quotation marks and citation omitted). But a party opposing an amendment based on delay must make "some significant showing of prejudice to the opponent[.]" *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986).

Defendants have failed to demonstrate prejudice. While the case had some history in the state court prior to removal, it remains in its infancy as this Court has yet to set this matter for a case management conference or set dates and deadlines. At this early stage in the proceedings, defendants would not be prejudiced by an amended pleading that simply clarifies the identities of the parties. Additionally, Darago has not demonstrated a repeated failure to cure deficiencies in the pleadings. That said, one of the proposed amendments identifies AM LV PR as a party defendant. Because the Court has already determined that it lacks personal jurisdiction over AM LV PR, permitting such an amendment would be futile.[11] Accordingly, the Court GRANTS Darago leave to amend and directs Darago to file an amended complaint that does not contain

---

[11] Defendants also complain that the proposed amended complaint should be denied as futile because it does not remove any of the "incorrect parties" identified in the original complaint. (MTA Live Nation defendants Opp'n at 495.) Live Nation defendants maintain that, despite numerous discussions with Darago's counsel advising that Live Nation Inc. and Viking Wizard Eyes are not proper parties, the proposed amended complaint still lists these entities as defendants. (*Id.* at 496–97.) While Live Nation defendants represent that these parties do not belong in the litigation, the Court cannot make that determination at this stage and based on the record currently before it.

either AM LV PR or James Grant as party defendants.

## VI. Conclusion

For all of the foregoing reasons, Darago's motion to remand is DENIED, the motions of James Grant and AM LV PR to dismiss are GRANTED, and Darago's motion to amend is GRANTED IN PART.

**IT IS SO ORDERED**.

Dated: July 15, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**